The opinion of the Court was delivered by
Wardlaw, J.
Hugh Hackett is still alive and residing abroad. It is then unnecessary to notice the provisions made by the will of William Hackett in favor of the sons of Hugh, upon the contingency of his death in the lifetime of the testator.
The will contains a plain expression of the testator’s intention to give to Robert G, McCaw a fee simple in trust; and to give it in such way, that the use should not be executed by the Statute 27 Hen. VIII., c. 10." Not only is there a declaration that the legal estate shall be vested in the trustee, but there is the requirement of an act to be done by him, the conveyance of the estate in fee, which necessarily presupposes the fee to be in him. Hugh Hackett has not become qualified to receive the conveyance, and never may become so ; the trust is then contingent, but the estate in the trustee is not thereby made contingent. No superadded limitation, or executory devise shows expressly what was the testator’s intention in case his brother Hugh should be alive at his death, and should not become a citizen qualified to hold real estate ; yet the intention is plain, that R. G. McCaw should take a fee, and take it only as trustee.
Concerning the execution of uses, as concerning other matters of construction, more indulgence is extended to wills than to deeds, and the cardinal principle of interpretation, applicable to all of these matters in a will, is the intention of the testator. Where he simply gives to one in trust for another, or to one in *81 trust to permit another to take the profits, or otherwise uses technical terms, whose sense is well fixed, his words will, without explanation given by himself in the instrument, be understood in their technical sense ; but where, by a plain expression, or a necessary implication arising from the duties which he imposes upon the trustee, he shows that he intends a legal estate to abide in the trustee, his intention will be respected. Thus expressed, the- intention is as manifest as if it appeared in the form of a use upon a use, (which ■ form is usually adopted in deeds to evade the statutes of uses,) and it is no more opposed to law or policy, than is any other contrivance for making that separation of the legal from the equitable estate, which is involved in every trust.
Where the intention of the testator is not expressed as to the quantity of the estate which the trustee shall take, “ the trustee must be presumed to take an estate commensurate with the charges or duties imposed on him.” (7 East, 99.) He must have sufficient power to perform the act required ; power more than sufficient will not be implied, for thereby the heir might be disinherited without a devise, or ulterior limitations in the will be defeated ; but wherever, from the face of the will, it is apparent that the testator meant to give a fee to the trustee, he will take a fee, although the purposes of the trust might have been effected by the grant of a less estate. (See a learned note by Mr. Greenleaf, in his edition of Cruise’s Dig. Tit. 12, Trust, ch. 1, § 14.)
Hugh Hackett, notwithstanding his neglect and refusal heretofore, may hereafter acquire'the qualification, which is made by the will a condition precedent of the conveyance from the trustee to him. At the very least, then, the trust for his benefit must be considered as a trust for his life, in like manner fs an estate during widowhood is, for the uncertainty of its duration, regarded as an estate for life. Looking only to the beneficial interest which is given absolutely by the will itself to Hugh Hackett, we might say that the purposes of the trust could be sufficiently served by implying in the trustee an estate for the *82 life of Hugh Hackett, capable of being enlarged into a fee simple upon Hugh Hackett’s complying with the condition of becoming a citizen ; and that, subject to this contingency, a reversion of the legal estate, to take effect upon the death of Hugh Hackett, is not conveyed by the will, but is in the heirs of the testator. The trust to convey in fee makes this case, however, like others, where a fee has been held to pass to the trustee; and the expressions of the testator’s intention forbid a construction under which a reversion or possibility of a reverter in a legal estate could be reserved to his heirs, (a)
If Hugh Hackett should not become a citizen, R. G. McCaw cannot take the beneficial interest after his death; for plainly R. G. McCaw is a mere trustee, and can derive no benefit from the failure of the trust. (b)
“ When the whole of an estate is conveyed for particular purposes, or on particular trusts only, which by accident or otherwise cannot take effect, a trust will result to the original owner or his heir.” (1 Green. Cruise Tit. 12, ch. 1, § 57.) To the heirs of William Hackett, (native born or naturalized kinsmen, see McKellar vs. McKellar, 1 Spear, 536,) will then result a trust, if Hugh Hackett should die without becoming entitled to receive conveyance of the fee. What, in that event, would be the operation of the statute of uses, when the legal estate which would be in R. G. McCaw, after the condition upon which he is to convey had been rendered impossible, and the trust had become a naked use for the heirs, it is useless for us now to consider.
It is then only to the trust during the life of Hugh Hackett, or until he shall comply with the condition prescribed in the will, that the claim of the escheator can extend.
It is contrary to the policy of the law that an alien, especially one residing abroad, should hold lands in this State, or enjoy *83 their profits; but it is not contrary to such policy, that lands should be conveyed to one from abroad after he has been naturalized, or that lands or their accumulated profits should be held by a citizen in expectation of the naturalization of a foreigner, to whom, in that event, they are to be conveyed.(c) A trust to pay profits, or to convey land, to an alien, falls within the principles which prevent an alien from holding the lands which he purchases. If the trust here was to convey unconditionally to Hugh Hackett, an alien, we say not now, whether it would be held, that notwithstanding the contrary intention of the testator, the legal estate would be transferred by the statute of uses to the alien, so that it might be forfeited ; or that the trust would be disregarded so that a title would result to the heirs, or the trustee would take the legal estate, and the alien the trust, subject to such right as might be urged in behalf of the State. As the case is, we find in the will nothing justly objectionable, besides the provision that the profits shall go to Hugh Hackett from the time of the testator’s decease; and it will be observed that that provision only extends to the Turkey Creek tract and the house and lot in Yorkville, not to the Chambers tract. The profits which, according to the will, Hugh Hackett is entitled to receive before his naturalization, the escheator in behalf of the State may recover from the trustee, if a trust is forfeitable for alienage of the cestui que trust, and if our law authorizes the escheator to proceed in such a case. Whether the recovery, if it can be had, will cover all profits subsequent to the establishment of an equitable title in the State by office found, or be confined to those that may arise after a decree against the trustee, it is not for us now to consider; it seems safe to say that it cannot by relation go back beyond the establishment of title.(d)
We have heard much argument upon the question, whether a trust is liable to escheat. The better opinion in England seems to be that it is not,(e) (Burgess vs. Wheat, 1 Eden, 177, *84 259, note; 1 Hargrave’s Tr. 385,) for escheat, whether propter defectum sanguinis, ox propter delictum tenentis, is a reversion of the land to the lord of the fee for want of a tenant, and the trustee is a good tenant. But this learning is not applicable to the case of a trust for an alien. The conveyance of land to an alien is, by English writers, classed as cause of forfeiture to the crown or sovereign(f) not of escheat to the lord of the fee. The right of the crown results from the disability of the alien to hold that which he had taken, and that disability was solemnly adjudged in the House of Lords to be “ neither a penalty nor a forfeiture.” (Att‘y Gen. vs. Duplessis, 2 Ves. Sen. 286, 362, 538 ; 1 Bro. P. C. 415.) The ground of it is the necessary policy which excludes from the enjoyment of real property those who are not bound by the tie of allegiance. By means of trusts, if they could be securely held by aliens, all the lands of the kingdom might be made to yield their profits to foreigners : and the English cases will be found to give no countenance to this result, if they are properly examined. The distinction(g) must be kept in mind between escheat (which is an incident of the feudal tenure, and can be only of the whole fee and not of any smaller estate) and the prerogative right of forfeiture (which may be of anjr interest whatsoever); — also the further distinction(h) between attainder for treason, (whence before the Norman conquest, and after it, arose forfeiture to the sovereign,) and attainder for felony (whence subject to a temporary exercise of the prerogative right, arose after the conquest, escheat to the lord). The king might be cestui que use, even according to the ancient law which held that he could not be seized to uses; and it is not considered unsuitable to his dignity to be cestui que trust, as it is to hold under a mesne lord.(i) As ah alien can have no inheritable blood, upon his death, as upon the death of a natu *85 ralized subject, whose only heirs are aliens, the lands of which he was seized, escheat ; but in the case of the alien, the escheat to a mesne lord is subject to the prerogative right of the sovereign to have whatever real estate an alien purchases; and the only difference made by the death is, that after it the king, without office, enters upon that of which no one can be lawfully in possession, whereas in the lifetime of the alien, an office would have been necessary.(k) The authorities which have been cited in the argument of this case, we think show, that a trust of land for an alien is liable to forfeiture. (See Hubbard vs. Goodwin, 3 Leigh’s R. 507; Leggett vs. Dubois, 5 Paige’s Ch. R. 114; Du Hourmelin vs. Sheldon, 1 Beavan, 79, 4 Myl. & C. 525 ; Fourdrin vs. Gowdey, 3 Myl. & K. 383; Rolls Abr. 194, 534; 2 Hayw. 108.)
Trusts are so peculiarly the subjects of equity jurisdiction, that resort to the Court of Equity would be necessary for the State or any one claiming in its behalf, to compel the trustee to execute the trust according to the rights which had accrued by the forfeiture. But before that resort, we are of opinion that there should be office found. “ The office was devised by law for an authenticated means to bring the king to the land by solemn matter of record, suitable to his regality, and-for the safety of the subject. That he should not enter and seize the land of the subject upon surmises, without matter of record.”(l) The office of entitling, distinguished from that of instruction, is used in the case of purchase of land by an alien, purchase in mortmain, and other cases where a right in the king is to become a vested estate in possession. In ordinary cases, the title of the king in certain land having been found by the office, a writ of seizure follows, and then [if there should be no super-sedeas] seizure by the escheator. After verdict for a claimant who has traversed the office, restitution is effected by judgment of amoveas manus, and writ of ouster le main. But, after the forfeiture of a trust in land had been found, there could be no *86 seizure, for the lawful possession would, by the finding itself, appear to be in the trustee. The office would, however, still be convenient, if not absolutely necessary, to inform the Chancery of the nature of the title, and to make the forfeiture matter of record.
“ In all cases where a subject shall not have possession, in deed or in law, without entry, the king will not be entitled, without office found or other matter of record.’'(m) “ But when a common person cannot enter or seize without having an action, the king, after office, ought to have a scire facias, as upon waste, cessavit, &c., [9 Co. 96,] for the office entitles the king to an action only, not to entry.”(n) As we think, after forfeiture of a trust in land found, the sovereign shall have subpoena in Equity; for by subpoena and not by entry, may a cestui que trust obtain enjoyment of profits.(o) In the case of Hubbard vs. Goodwin, no office preceded the application to Chancery, because there the alien, Phillips, was dead, and the benefit of the purchase made by him [which, in the English law, would have been said to have been made only ad proficium regis, 7 Co. 25] was by the law itself vested in the sovereign, for want of any person who could possibly be in possession de jure.
As to the mode in which an office shall be found for establishing the title of the sovereign, many old statutes enacted in England were never made of force in this State, and the only one of them which was made of force, 1 Hen. VIII., c. 8, is not printed in our statutes at large.(p) That one made regulations concerning traverses, and like all the others, has been superseded by our Act of 1787, [5 Stat. 47,] entitled “ An act to appoint escheators and to regulate escheats.” This Act, and the amendments of it, contain the only provision which we have of machinery for executing such law concerning escheats and forfeitures, as now prevails in this State. An office of inquisition *87 for entitling must be found under them, or not be found at all. The Act of 1787, after appointment of escheators, contemplates first and mainly, the case of escheat ob defectum sanguinis, where there was no tenant, but the person last seized had, before ■ that Act, died “ without leaving any person who can lawfully claim such lands, either by purchase or descent from such former proprietor.” It provides, in reference to such case, for inquest of office, public notice, order of sale, [equivalent to a writ of seizure,] sale if there should be no claimant, traverse by a claimant, and trial. It guards against titles subsequent to the death of the last owner, and saves the rights of persons under-disabilities. The 8th section relates to personal property, and the 12th extends the mode of proceeding which, by the Act, had been before provided “ for recovering and appropriating reál and personal property heretofore escheated to this State, and to be. come hereafter fully vested by the verdict of a jury as aforesaid,” to all cases “where any person shall hereafter die without heir, or shall forfeit his lands by conviction of treason, or otherwise become divested thereof by operation of law, without leaving any legal representative.” These words embrace every case where the State, by virtue of its sovereignty, without contract, or need for public use, becomes by law vested with the title in a portion of its territory whereof any person was seized; and to every such case the term escheat is here applied in disregard of the technical signification of that term in the English law. An alien who purchases lands becomes divested thereof by operation of law; the office ascertains the forfeiting and vests in estate and possession the right which was in the sovereign from the time of the purchase; the death of the alien is not essential to the office in the case of a purchase by an alien, any more than it is in the case of a tenant “ convicted of treason,” or of a body corporate that has, without license, purchased in mortmain ; for, in all of these cases, the words “ without leaving any legal representative,” are answered before the death by the law’s having transferred the title in the forfeited estate to the sovereign, so as to leave no interest therein either *88 to the tenant or any person claiming to represent him. These words were by the draftsman of the Act of 1787, probably intended to relate to the case of a person dying “ without heir,” and to signify the same thing as the words before used, “ without leaving any person who can lawfully claim by purchase.’’ If the obvious construction which we have given to the 12th section of the Act should not prevail, we would have no law at all by which an alien could, during his lifetime, be divested of the lands he might purchase: it would no longer be correct to say here that an alien may take but cannot hold, and many of our cases would be unmeaning and erroneous.[q]
if Hugh Hackett, the alien, had then the legal estate in fee, we doubt not that under the Act of 1787, the right of the State might* be asserted through a proper inquisition. As he has, however, only a trust in any of the lands, and that for his life only, with a contingency for enlargement, the mode of proceeding prescribed by the Act of 1787 is not entirely applicable. It may be followed as to the inquest, notice, traverse and trial, but not as to the sale. The Act requires that the order for sale should be signed by a judge — thus showing that the propriety of the order is matter for judicial determination. .Where the right of seizure and possession does not appear by the inquest to be in the State, it would not be proper for the order to do more than pronounce the escheat, or forfeiture, which has been found ; and the escheator would be left to give effect to the right shown by the record, by filing a bill in Equity, or taking other proper proceedings.
Is the inquisition which has been had in this case such as the circumstances require ? A proper inquisition would have found the seizure of William Hackett, a citizen, the devise made by his will, and his death ; the alienage of Hugh Hackett, now living, the legal'estate which is in the trustee, the beneficial interest which is given to Hugh Hackett, the trust which results *89 to the heirs of William Hackett, the contingency on which that depends, who those heirs are ; and the forfeiture of such beneficial interests as are absolutely given to be enjoyed by an alien. But the inquisition[r] before us, following the form suitable for the case of escheat propter defectum sanguinis, finds that William Hackett died seized of the lands described, without leaving any person who can legally claim the same by descent or purchase, just as if William Hackett had been himself an alien and had died intestate. All this is wrong. William Hackett was a citizen. He left heirs, and those heirs would take his lands by descent, if it were not that he also left a will, under which other persons can lawfully take them as purchasers. As the case stands, the escheator is not entitled to possession, nor has he shown by proper record, the, forfeiture of a trust under which he might have an order to assist his proceeding in Equity; the persons claiming as heirs, have no right to present possession, for the devise obstructs the descent to them ; the purchasers from Hugh Hackett have no right, for Hugh never had any legal estate, and has taken no step toward acquiring the qualification which would entitle him to claim the conveyance of an estate to him; and K,. G, McCaw lawfully holds the legal estate, subject to the trusts for Hugh Hackett during his life, or until he shall be qualified to receive conveyance in fee, and if Hugh Hackett should die without being qualified, a resulting trust for the heirs of William Hackett.
The inquisition must be quashed, and if theeschqator should think proper to subject to forfeiture the trust estate which is forfeitable for alienage, he must proceed de novo, as he may be advised.
It is ordered that the inquisition be quashed. *90 Court iu the cases arising out of the inquest. The matter about which I would guard myself, at present, is as to the kind and quantity of estate conferred upon McCaw by the will of William Hackett. I do not know that it is material to settle that point now, nor do I design to discuss it. Without being at all dogmatical, however, I suggest that McCaw takes, in trust, not a fee absolute, but an estate capable of being enlarged to that quantity upon the happening of a condition subsequent and contingent, to wit, the naturalization of Hugh Hackett, whereupon the trustee is to convey to him in fee ; but whether the result of this view may not leave in the testator an undevised interest descendable and descended to his heir at law, to be divested by the occurrence of the contingency that may enlarge McCaw’s estate to a fee absolute, may be a point unnecessary to be now determined but, perhaps, proper to be reserved.
*89 Piiost and Whitner, JJ., concurred.
G’Neall, J. 1 concur in the result of the cases.
Withers, J. I concur in the judgment pronounced for the
*90 Glover, J., concurred.

Inquisition quashed.

 Mott vs. Buxton, 7 Ves. 201; Garth vs Baldwin, 2 Ves. Sen. 646; Doe vs. Field, 2 B. & Ad. 564; Bagshaw vs. Spencer, 1 Ves. Sen. 142.

 Morrice vs. Durham, 9 Ves. 399; 10 Ves. 522; Finley vs. Hunter, 2 Strob. Eq-. 216.

 2 Shep. Touch, by Preston, 325; 2 Plow. 482; Craig vs. Leslie, 3 wheat, 589.

 5 Co. Rep. 52; 3 Wheat. 663, 589; 3 Leigh’s R. 522.

.Crabb on Real Prop. § 1713; Cruise’s Dig. Tit. 12; Trust, oh. 1, § 27, 29.

 2 Bla. Com. 268.

 2 Bla. 293, 245; Crabb on Real Prop. 2441.

 4 Bla. Com. 418.

 1 Hale’s P. C. 248; Com. Dig. üse, 3?. G.; Cruise’s Dig. Tit. xi., ch. 2, § 16; Cruise’s Dig. Tit. xii., ch. 2, § 25; Ch. 3, § 8,23: Bac. Ab. Prerogative, E.; Hardress 468.

 Co. Litt. 2, b ; Com. Dig. Alien. C. 2; Uarlock vs. Jackson, 1 Tread. 141.

 Viner’s Abr. “Office of Inquisition.” A. B.; Bac. Abr. Prerogative, E. 7,

(m) Com. Dig. Prerogative, D. 67.

(n) Id. D. 69.

(o) 1 Jarm. on wills, 60; 2 Leigh’s R. 621.

(p) 2 Stat. 467, 408; Viner’s Abr. Office of Inquisition, P.

(q) Laurens vs. Jenney, 1 Spear, 365 ; Escheator vs. Smith, 4 McC. 452; Harlock vs. Smith, & Brev. 254; Vaux vs. Nesbit, 1 McC. Ch. 381; McClenaghan vs. McClenaghan, 1 Strob. Eq. 322.

(r) Miller’s Comp. 189.